(No. 3789— )

BESSIE M. TANNER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 12, 1944.*

THOMPSON, CHAMBERS & THOMPSON, for claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant Attorney General, for respondent.

CHIEF JUSTICE DAMRON delivered the opinion of the court:

This complaint was filed on April 2, 1943. It is for benefits under the Workmen's Compensation Act for the permanent partial loss of the use of the claimant's right arm and for temporary total disability suffered as a result of an accident received in the course of her employment at the Chicago State Hospital, 6500 West Irving Park Road, Chicago, Illinois.

The record consists of the complaint, testimony, abstract of same, brief on behalf of claimant and brief and argument on behalf of respondent, report of the Acting Managing Officer of said hospital and stipulation.

By virtue of the stipulation entered into by counsel it was agreed that the plaintiff was injured on January 23, 1943, while in the course of her employment and that her wages were $1,062.00 per year and that at the time of said injury both the respondent and the employee were under the Workmen's Compensation Act of this State.

The testimony consists of that of the claimant and Dr. Albert C. Field, orthopedic surgeon of Chicago, called on her behalf; the report of the Managing Officer of the Chicago State Hospital, and the evidence of Dr. Catherine L. McCorry, who testified for the respondent.

The evidence shows that while claimant was walking on the sidewalk on the grounds of said institution she slipped on the ice on the sidewalk and fell fracturing the lower end of the radius, and causing a bony injury to the styloid process of the ulna, and there is evidence of a bony injury to the trapezius. All of these injuries were to her right arm.

Dr. Field's testimony as to the limitation of motion in the arm and hand is as follows:

"Flexion is limited to about 20 degrees out of a normal 85 degrees; a loss of about 75 per cent; eversion is normal; inversion is about 50% of the normal range; an inability on the part of the patient to bring the tip of the thumb to the 5th metacarpal phalangeal joint; difficulty in bringing the tip of her hand to the wing of the scapula; loss of one-half of claimant's normal range on supination; pronation normal."

Dr. Field further testified that the injuries in question were permanent and that claimant had lost between 40% and 50% of the use of her right arm. Dr. Field also testified to an inward bowing of the claimant's right forearm at the lower third; and that the hand is deviated

toward the radial side, causing a prominence of the lower end of the ulna.

Dr. McCorry testified on behalf of respondent that she gave claimant first aid. She diagnosed the injury as a "silver forked deformity" of the right wrist. She was not an orthopedic surgeon and was basing her testimony on the report of the Department of Public Welfare. This report in paragraph 6 diagnosed the injury as a Colles fracture, and states "she will have a 95% function of her injured wrist."

Claimant testified that she was immediately taken to the hospital where Dr. Brocopie set her arm two days after the accident in a plaster of Paris cast. This cast she wore for five weeks which was then removed and a solid aluminum one applied, which she wore for two weeks. This doctor did not testify and neither did Dr. Cohen of the hospital staff, who at the time examined the claimant's arm.

X-rays were made by the respondent but they were not introduced in this case.

There is considerable disagreement between the respondent and claimant as to the extent of the permanent injury to her arm. The claimant contends that there is between a 40% and 50% loss of the use of her right arm. The respondent has no record of loss of percentage except the departmental report which states there will be a 95% recovery although this is not supported by medical testimony. The testimony shows that claimant has certain definite restrictions in the use of this arm and this necessarily must impair the efficient use of her arm. Claimant will have a permanent impairment from many physical exercises that the use of the arm requires, and she will be incapacitated in the performance of her duties.

From a consideration of all the evidence it would appear to this court that a reasonable conclusion would be that claimant has been permanently injured to the extent of 40% of the use of her right arm, and the court so finds.

The court further finds from the evidence that the claimant at the time of the injury was 58 years of age and had no children under the age of sixteen years dependent upon her and that all necessary medical, surgical and hospital services were provided by the respondent.

From the record the court finds that the annual wages of the claimant for more than one year prior to her injury was $1,062.00; her average weekly wage therefore amounted to the sum of $20.42; that under Section 8, paragraph (e) and (1) her compensation rate would be $11.23. The court further finds that this claimant was incapacitated for eleven weeks and six days for which she is entitled to temporary compensation at the above rate, amounting to the sum of $133.13. The court further finds that under the above section and paragraphs of the Workmen's Compensation Act claimant has suffered a 40% loss of the use of her right arm which entitled her to receive the sum of $1,010.70, together with her temporary compensation which amounts to the total sum of $1,143.83. The court finds, however, that claimant was paid during January and February, 1943, the sum of $60.36 salary for unproductive work, which must be deducted from the last mentioned sum, leaving a balance now due her of $1,083.47.

The court further finds that fifty weeks have elapsed since the date of her injury, and therefore the sum of $561.50 has accrued as of January 8, 1944, and is now payable in a lump sum, leaving a balance due her of $521.97. This last amount to be paid to her at the rate of

$11.23 per week for a period of forty-six weeks with a final payment of $5.39.

An award is therefore entered in favor of claimant as above indicated.

This award is subject to the approval of the Governor as provided in Section 3 of ''An Act concerning the payment of compensation awards to State employees.''